IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SYSTEMS AMERICA, INC., a Delaware Corporation and NEXENT VENTURES LLC, a Delaware Corporation,<br><br>Plaintiffs,<br><br>v.<br><br>PROVIDENTIAL BANCORP, LTD., an Illinois Corporation; ROBERT JORDAN; NOMAD VENTURES LLC, an Illinois Limited Partnership; INTERIMCEO, INC., an Illinois Corporation; BARRETT MIKELBERG; and SAMMY AVERBUCH,<br><br>Defendants. | ) | Case No. 05 C 2161 |

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

On April 4, 2005, the United States District Court for the Northern District of California transferred this action to this District. In their eight-count Complaint, Plaintiffs Systems American, Inc. ("Systems America") and Nexent Ventures, LLC ("Nexent") allege violations of the California Uniform Trade Secrets Act and the California Business and Professions Code against all Defendants. Plaintiffs also allege trade libel against Defendants Barrett Mikelberg ("Mikelberg") and Providential Bancorp, Ltd. ("PBL"), breach of written and oral contract against PBL, and other common law claims against all Defendants. Before the Court is PBL's motion to dismiss Plaintiffs' California state law claims pursuant to Federal Rule of Civil Procedure 12(b)(6) and the remainder of Plaintiffs' claims pursuant to Federal Rule of Civil Procedure 9(b). Plaintiffs request that the Court allow them to amend their Complaint if the Court dismisses the California state law claims. Because the Court concludes that Illinois law

applies, Plaintiffs' request to amend their Complaint is granted. As such, the Court grants Defendants' motion to dismiss in part.[1]

## LEGAL STANDARD

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of a complaint, not the merits of the case. *Triad Assoc., Inc. v. Chicago Hous. Auth.*, 892 F.2d 583, 586 (7th Cir. 1989). The Court will only grant a motion to dismiss if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Centers v. Centennial Mortgage, Inc.*, 398 F.3d 930, 933 (7th Cir. 2005) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102, 2 L Ed.2d 80 (1957)). In making its determination, the Court must assume the truth of the facts alleged in the pleadings, construe the allegations liberally, and view them in the light most favorable to the plaintiff. *Centers*, 398 F.3d at 933.

## BACKGROUND

### I. Plaintiffs' Allegations

#### A. Parties

Systems America is a Delaware corporation with its principal place of business in San Jose, California. (R. 40-1, Complaint; ¶ 1.) Adesh Kumar Tyagi ("Tyagi") is the principal stockholder of Systems America. (*Id.* ¶ 13.) Nexent is a Delaware corporation with its principal

---

[1] Because the Court grants Plaintiffs' request to amend their Complaint, the Court need not address Defendants' arguments under Federal Rule of Civil Procedure 9(b) at this time. The counts to which Defendants' Rule 9(b) arguments pertain incorporate the allegations in the California state law claims. Because the Court is dismissing these claims, the Court will allow Plaintiffs to amend their Complaint to include Illinois state law claims. Once Plaintiffs amend their Complaint, Defendants will have the opportunity to raise any Rule 9(b) arguments at that time.

place of business in San Jose, California. (*Id.* ¶ 2.) Tyagi serves Nexent in some capacity. (*Id.* ¶ 14.)

PBL is an Illinois mortgage brokerage corporation with its principal place of business in Chicago, Illinois. (*Id.* ¶ 3.) Defendants Nomad Ventures, LLC ("Nomad") and Interimceo, LLC, ("Interimceo") are both Illinois corporations with their principal place of business in Chicago, Illinois. (*Id.*) Nomad and Interimceo are both stockholders of PBL. *Id.* Defendant Robert Jordan ("Jordan" ) is the managing partner of Interimceo and a resident of Illinois. (*Id.* ¶¶ 4, 14.) Defendant Dale Turken ("Turken") is a stockholder in PBL and a resident of Illinois. (*Id.* ¶¶ 5, 16.) Defendant Mikelberg is a resident of Illinois and the President of PBL. (*Id.* ¶¶ 6, 29.) Defendant Sammy Averbuch ("Averbuch") is a resident of Illinois. (*Id.* ¶ 7.)

**B. Term Sheet**

Plaintiffs allege that on or about November 2003, Jordan approached Tyagi in Tyagi's capacity with Nexent to discuss a potential investment in PBL. (*Id.* ¶ 14.) As a result, Nexent and PBL entered into a written non-disclosure agreement. (*Id.*) During December 2003 and January 2004, Plaintiffs, Jordan, and PBL negotiated the investment. (*Id.* ¶ 15.) The negotiations culminated by Turken and Tyagi signing a Term Sheet. (*Id.* ¶ 16.) In compliance with the terms set out in the Term Sheet, Jordan and Turken visited the Plaintiffs' facility in India. *Id.* Under the conditions of the Term Sheet, Nexent agreed to invest $2 million in services provided by Systems America in exchange for Nexent receiving 16.66 percent worth of preferred stock in PBL. (*Id.*) Systems America also agreed to provide outsourcing services from India to originate, process, and close mortgages for PBL. (*Id.* ¶ 16.)

After Plaintiffs and PBL signed the Term Sheet, Systems America commenced its part of

the bargain by assigning one hundred of its employees in India to originate, process, and close mortgages for PBL. (*Id.* ¶ 17.) Plaintiffs estimate that these services were worth approximately $1,187,000. (*Id.*) After Plaintiffs ceased providing these services, Plaintiffs contend that Turken forwarded an e-mail to the staff of PBL praising Systems America. (*Id.* ¶ 18.) Moreover, Turken allegedly expressed PBL's willingness to sign a Services Agreement with Plaintiffs. (*Id*.) Plaintiffs allege that they relied on Turken's representations and continued to provide services to PBL pursuant to the Term Sheet. (*Id.*)

In or around March 2004, Jordan forwarded to Tyagi a Providential Series B Stockholders Agreement, a Series B Stock Purchase Agreement, a confidential acquisitions memorandum, and an acquisition memorandum regarding distribution. (*Id.* ¶ 20.) On March 22, 2004, Tyagi, representing Systems America, agreed to the terms of the documents. (*Id.* ¶ 22.) Tyagi then sent a Service Agreement to Jordan and Jordan sent a corrected version of the document back to Tyagi. (*Id.*)

**C. Telemarketing**

Plaintiffs further allege that in early 2004, PBL provided a list of persons for Systems America's employees to call for telemarketing. (*Id.* ¶ 25.) Plaintiffs contend that they subsequently learned that PBL did not eliminate phone numbers included in the National Do-Not-Call Registry ("DNCR"), which is managed by the Federal Trade Commission. (*Id.*) In April or May 2004, the State of Wisconsin sent a warning letter to Plaintiffs alleging that Plaintiffs' employees placed marketing calls to phone numbers included in the DNCR. (*Id.*) In addition, Plaintiffs allege that Defendants failed to obtain a "SAN" number, which federal law requires before a company may place telemarketing calls in the United States, even tough they

represented to Plaintiffs that they had a SAN number. (*Id.*)

**D. Proprietary Software**

In or about February 2004, Plaintiffs claim that Systems America, in reliance on their contractual relationship with PBL, created a computer program, "DreamOne," specifically designed for the mortgage industry and presented this program to Defendants. (*Id.* ¶ 19.) PBL copied DreamOne to its server in Chicago, Illinois. (*Id.*) In or about March 2005, PBL began to use the DreamOne software. (*Id.* ¶ 22.) Further, in early 2004, Turken sent an e-mail to Plaintiffs regarding the use of additional software, "Encompass." (*Id.* ¶ 23.) Thereafter, PBL sent Plaintiffs a copy of Encompass. (*Id*.) Plaintiffs allege that PBL's copy of Encompass was illegal because it was created and owned by Ellie Mae, Inc., a software company that is not a party to this lawsuit. (*Id*.)

**E. Plaintiffs' Invoices**

Shortly after Plaintiffs presented the aforementioned DreamOne software to Defendants, Systems America forwarded an invoice to PBL for its services. (*Id.* ¶ 19.) Plaintiffs claim that Defendants continued to represent that they would compensate Plaintiffs for the brokering services in India and the software program. (*Id.*) Plaintiffs also claim that from February to September 2004, Plaintiffs sent reports to PBL detailing the hours that Plaintiffs' employees had worked pursuant to the parties' agreement. (*Id.* ¶ 24.) This report also outlined the hourly billing rates as set forth in a "Fees and Charges" schedule to which Defendants had orally agreed. (*Id.*) Plaintiffs further allege that Defendants orally agreed to pay Plaintiffs a share of the revenue generated by the brokering services as "incentive compensation." (*Id.*) Moreover, Plaintiffs allege that Defendants never objected to the services provided by Plaintiffs. *Id.*

### F. Potential Acquisition

In or about June 2004, Jordan told Tyagi that PBL was not "doing that well in terms of revenues and profitability." (*Id.* ¶ 27.) In addition, Plaintiffs allege that Jordan recognized the debt PBL owed to Plaintiffs pursuant to the Term Sheet and proposed that Plaintiffs acquire PBL as an alternative to PBL paying for these services. (*Id.)* Jordan sent audited financial statements to Plaintiffs for acquisition consideration. (*Id.)* Nexent then offered to purchase 100 percent of PBL's stock, but PBL declined. (*Id.* ¶ 28.) As a result, Plaintiffs demanded immediate payment of the debt owed to them by PBL. (*Id.*) In response, Jordan sent a message to Tyagi affirming Defendants' promise to honor their commitments to Plaintiffs. *Id.* Plaintiffs allege, however, that weeks later, Defendants said that they would not pay for any of the Plaintiffs' outsourcing services. (*Id.* ¶ 29.) Moreover, Plaintiffs claim that Mikelberg commented to Plaintiffs' clients and competitors that Plaintiffs "did not know how to do business and could not be trusted." (*Id.*) In addition, Plaintiffs allege that third parties have invested more than $1 million in PBL as a "direct consequence" of the services Plaintiffs provided. (*Id.* ¶ 30.)

## II. Transferor Court

On April 4, 2005, the United States District Court for the Northern District of California transferred this action to this Court. *See Systems America, Inc. v. Providential Bancorp, Ltd., et al.* , 2005 WL 757553 , *1 (N.D. Cal. April 4, 2005). The California court concluded that "[d]efendants' have made a substantial showing that this Court lacks personal jurisdiction over them and that venue in the Northern District of California is improper." *Id.* The court further concluded that "even if the Court were to reject Defendants' arguments with respect to jurisdiction and venue, the statutory factors under §1404(a) still would weigh in favor of

transfer." *Id.*

## ANALYSIS

Defendants contend that Illinois law applies to Plaintiffs' claims, and thus the Court should dismiss any claims based on California law. On the other hand, Plaintiffs request to amend their Complaint if the Court concludes that Illinois law applies.

### I. Subject Matter Jurisdiction

As an initial matter, the Court addresses subject matter jurisdiction. Plaintiffs' Complaint asserts diversity as the sole basis for subject matter jurisdiction. "It is axiomatic that a federal court must assure itself that it possesses jurisdiction over the subject matter of an action before it can proceed to take any action respecting the merits of the action. The requirement that jurisdiction be established as a threshold matter 'springs from the nature and limits of the judicial power of the United States' and is 'inflexible and without exception.'" *Cook v. Winfrey*, 141 F.3d 322, 325 (7th Cir. 1998), *quoting Steel C. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998).

Plaintiffs' diversity allegations are deficient in two respects. First, Plaintiffs allege the residences of each of the individuals. "[A]llegations of residence are insufficient to establish diversity jurisdiction. It is well settled that [w]hen the parties allege residence but not citizenship, the court must dismiss the suit." *Held v. Held*, 137 F.3d 998, 1000 (7th Cir. 1998) (citations and quotations omitted). Because Plaintiffs only allege the residence of each individual party and not their respective citizenship, the Complaint is dismissed without prejudice for failure to sufficiently allege diversity jurisdiction.

Second, Plaintiff Nexent and Defendant Nomad are both LLCs. Plaintiffs neither

identify any members of these LLCs, nor particularizes any citizenship allegations as to these members. As the Seventh Circuit has noted, "the citizenship of an LLC for purposes of the diversity jurisdiction is the citizenship of its members." *Cosgrove v. Bartolotta*, 150 F.3d 729, 731 (7th Cir. 1998). This provides an independent ground to dismiss the Complaint without prejudice for failure to sufficiently plead diversity jurisdiction.

Given that the Court will allow Plaintiffs to file an amended complaint addressing these deficiencies, for the sake of efficiency, the Court will address the merits of Defendants' motion to dismiss. As noted below, Illinois law applies, thus Plaintiffs will also have to file an amended complaint addressing this issue.

## II. Governing Law

When federal jurisdiction is based on diversity of citizenship, a district court must look to the law of the forum in which it sits for substantive law, *see Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938), including the forum state's rules governing choice of law. *See Klaxon Co. v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941); *see also FDIC v. Wabick*, 335 F.3d 620, 625 (7th Cir. 2003). Choice of law principles become more complicated, however, when a federal district court transfers a case to another federal district court pursuant to 28 U.S.C. § 1404(a). *International Mktg., Ltd. v. Archer-Daniels-Midland Co.,* 192 F.3d 724, 729 (7th Cir. 1999). Under these circumstances, the transfer of a case does not affect choice-of-law rules of the state in which the original court sat. *Id.* (citing *Van Dusen v. Barrack,* 376 U.S. 612, 639, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964)); *see also Cromeens, Holloman, Sibert, Inc. v. AB Volvo,* 349 F.3d 376, 383 (7th Cir. 2003) (when a case has been transferred from another district, the transferee court applies choice of law rules

of transferor court).

The instant action is more than a Section 1404(a) transfer case, however, because the California court concluded that he did not have personal jurisdiction over the Defendants and that venue in the Northern District of California was not proper. Under such circumstances, the choice of law rules change. Specifically, if there is no personal jurisdiction over a defendant in the original forum, the choice of law principles of the transferee forum apply. *See Tillett v. J.I. Case Co.*, 756 F.2d 591, 593 n.1 (7th Cir. 1985) (transferor court lacked personal jurisdiction, thus transferee forum's choice of law rules governed claim); *see also Doering v. Copper Mountain, Inc.*, 259 F.3d 1202, 1209 (10th Cir. 2001) ("When the transferor court lacks personal jurisdiction, however, the choice of law rules of the transferee court apply"); *Songbyrd, Inc. v. Estate of Grossman*, 206 F.3d 172, 180 (2d Cir. 2000) (law of transferor jurisdiction applies only if transferor court had personal jurisdiction).

Accordingly, because the California court lacked personal jurisdiction over Defendants and venue was not proper in the Northern District of California, the Court will apply Illinois choice of law provisions to Plaintiffs' claims.

## III. Illinois Choice of Law Provisions

### A. Contract Claims

Illinois has adopted the Restatement (Second) of Conflict of Laws, Section 188(2) for resolving choice of law issues concerning contracts. *Gramercy Mills, Inc. v. Wolens*, 63 F.3d 569, 572 (7th Cir. 1995); *Employers Ins. of Wausau v. Ehlco Liquidating Trust,* 309 Ill.App.3d 730, 739, 243 Ill.Dec. 384, 723 N.E.2d 687, 694 (Ill.App.Ct. 1999). Section 188(2) of the Restatement provides five factors relevant to making this choice of law determination, including

(1) the place of contracting, (2) the place of negotiation, (3) the place of performance, (4) the location of the subject matter of the contract, and (5) the parties' domicile, residence, place of incorporation, and place of business. *Gramercy Mills*, 63 F.3d at 572; *Employers Ins. Wausau*, 309 Ill.App.3d at 739.

Here, the Court concludes that Illinois law applies to the parties' agreement.[2] Although Plaintiffs negotiated the agreement in California and Defendants in Illinois, the parties signed the Term Sheet in India and performed the agreement in India and Illinois. Specifically, Systems America's performance included providing outsourcing services in India to originate, process, and close mortgages for PBL. To this end, Systems America assigned one hundred of its employees in India to perform these tasks. Further, under the parties' agreement, Nexent agreed to invest $2 million in services provided by Systems America in exchange for Nexent receiving 16.66 percent worth of preferred stock in PBL. While the preferred stock was outstanding, PBL had the duty to maintain its corporate existence, submit certain IRS reports, and maintain adequate property and business insurance, among other duties. (*See* Complaint, Ex. 1, Term Sheet, at 6.) The performance of these duties occurred at Defendants' place of business -- Chicago, Illinois.

Moreover, Plaintiffs' Complaint contains no allegations that the parties executed the agreement in California or that it was to be performed there. In fact, Plaintiffs make no arguments in their legal memorandum in opposition to Defendants' motion to dismiss concerning Illinois or California choice of law provisions. Accordingly, Plaintiffs have waived

---

[2] It is unclear from the Complaint whether the parties executed or performed the Services Agreement. (*See* Compl. ¶¶18, 22.) Thus, the Court focuses on the parties' contract as memorialized by the Term Sheet.

any argument that California law applies to the contract claims at issue. *See Estate of Moreland v. Dieter*, 395 F.3d 747, 759 (7th Cir. 2005) ("Perfunctory or undeveloped arguments are waived"); *see also Volvosek v. Wisconsin Dep't of Agr. Trade & Consumer Prot.*, 344 F.3d 680, 689 n. 6 (7th Cir. 2003) (complete absence of legal argument waives consideration of claim).

**B. Torts Claims**

As to tort law claims, Illinois courts have adopted the "most significant contacts" test from the Restatement (Second) of Conflict of Laws, Section 145. *See FMC Corp. v. Capital Cities/ABC, Inc.*, 915 F.2d 300, 302 (7th Cir. 1990); *Wreglesworth v. Arctco, Inc.*, 316 Ill.App.3d 1023, 1031, 250 Ill.Dec. 495, 738 N.E.2d 964, 968 (Ill.App.Ct. 2000). Under this test, the Court evaluates the following contacts: (1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the parties' domicile, residence, place of incorporation and place of business; and (4) the place where the relationship between the parties, if any, is centered. *Wreglesworth*, 316 Ill.App.3d at 1031.

Based on this test, the Court concludes that Illinois law also applies to Plaintiffs' tort claims. Here, Plaintiffs allege that Defendants converted Plaintiffs' intellectual property, namely, the DreamOne software, to their own use for marketing purposes. Plaintiffs specifically allege that PBL copied this software to its server in Chicago, Illinois, and that in or about March 2005, PBL began to use the DreamOne software. Plaintiffs also allege that PBL negligently failed to "scrub" its marketing list against the National Do-Not-Call List before PBL sent the marketing list to Plaintiffs. Plaintiffs assert that Mikelberg made derogatory comments regarding Plaintiffs to Plaintiffs' clients and competitors. Based on these allegations, Defendants' actions occurred at their principal place of business in Chicago, Illinois.

More importantly, Plaintiffs did not allege that Defendants' tortious acts occurred in California, nor have Plaintiffs made any legal arguments regarding choice of law provisions for their tort claims. Thus, Plaintiffs have waived any argument that California law applies to the tort claims in their Complaint. *See Estate of Moreland*, 395 F.3d at 759.

**CONCLUSION**

The Court *sua sponte* dismisses this lack for lack of subject matter jurisdiction. The Court also grants Defendants' motion to dismiss in part. Plaintiffs have until September 16, 2005, to file an Amended Complaint addressing the deficiencies noted in this opinion.

Dated: August 19, 2005

**ENTERED**

**AMY J. ST. EVE**
**United States District Court Judge**